**IN THE CIRCUIT COURT OF COLE COUNTY, MISSOURI**

| | | |
|---|---|---|
| 62ND & 65TH REGIMENTS LEGACY | ) | |
| FOUNDATION INC. f/n/a LINCOLN | ) | |
| UNIVERSITY FOUNDATION INC. | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Case Number:  19AC-CC00203 |
| | ) | |
| v. | ) | INJUNCTIVE RELIEF |
| | ) | REQUESTED |
| | ) | |
| BOARD OF CURATORS OF | ) | JURY TRIAL DEMANDED |
| LINCOLN UNIVERSITY | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## VERIFIED AMENDED PETITION

COMES NOW, Plaintiff 62nd & 65th Regiments Legacy Foundation Inc., f/n/a Lincoln University Foundation Inc. ("Foundation"), and for its Verified Petition against Defendant, the Board of Curators of Lincoln University ("University") states and alleges as follows:

## INTRODUCTION

For nearly half a century the Foundation has served Lincoln University by raising and disbursing donor funds for scholarships for University students and in support of University initiatives and activities. Over the course of this time and in partnership with over half a dozen University administrations, the Foundation has raised and disbursed millions of dollars for the direct support of the University and its students.

The Foundation and Lincoln University entered into a 2015 Amended Memorandum of Understanding whereby the University would provide administrative and general support services to the Foundation to assist the Foundation in continuing to solicit, manage and disburse donor funds for the benefit of students and the University.  The Foundation brings this Petition to

recover all Foundation documents, information, and assets, including approximately $667,000 in Foundation special-purpose funds that the University wrongfully removed and retains: (1) in breach of its agreements with the Foundation and donors; and (2) in breach of the covenant of good faith and fair dealing. The Foundation further seeks an order requiring that the University immediately cease and desist use of all Foundation donor information and documents.

**PARTIES**

1.      The Foundation is a nonprofit corporation organized under the Missouri Nonprofit Corporation law pursuant to Chapter 355 of the Revised Statutes of Missouri, 2017.  It solicits, secures and stewards donor gifts in support of the education, research and community activities of Lincoln University.

2.      The Board of Curators for Lincoln University is a public governmental body established and organized under Missouri law and is the governing body of Lincoln University.

3.      Lincoln University is a historically black public land-grant university located in Jefferson City, Missouri, and was founded by soldiers and officers of the 62nd and 65th United States Colored Infantry at the close of the American Civil War.

**JURISDICTION AND VENUE**

4.      This Court has personal jurisdiction over Defendant because Defendant is principally located in Cole County, Missouri.

5.      Venue is proper in this Court because a substantial part of the events giving rise to the claim occurred in Cole County, and Defendant is subject to this Court's personal jurisdiction.

**FACTS**

**A.  Memorandum and Understanding Between the University and the Foundation**

6.      On September 10, 2015, the Foundation and the Board of Curators of Lincoln

2

University entered into an Amended Memorandum of Understanding ("Agreement") to facilitate fundraising for the University and student scholarships. **Exhibit ("Ex.") A** (September 10, 2015 Memorandum of Understanding).

7.      The Agreement replaced an existing memorandum of understanding that had been in place since 2000, which provided that the University would provide administrative support to the Foundation for purposes of providing scholarships to students and financial support to the University.

8.      Under the terms of the Agreement, the Foundation would serve as "the primary external fundraising entity of the University and its Curators."

9.      Among other things, the Agreement details the obligations both parties agreed to in order to raise, manage and disburse funds for the University and its students.

10.     The University agreed to provide three distinct categories of support to the Foundation pursuant to the Agreement. The categories included: (1) Physical Facilities; (2) General Administrative Support; and (3) Financial Administrative Support.

11.     First, the University agreed to provide physical facilities to the Foundation.  To this end, the University provided the Foundation with "(1) office space; (2) local telephone service; (3) utilities; (4) office furniture; (5) other such facilities as may be necessary from time to time."

12.     Second, the University agreed to provide the Foundation with general administrative support.  General administrative support included, among other things, maintaining "accurate and complete Foundation files"; managing "Foundation-sponsored scholarships"; and handling "correspondence, research, and other Foundation business."

13.     Finally, the University also agreed to provide financial administrative support.

This category of support included: "receiving and processing deposits"; processing "disbursement vouchers"; preparing "disbursements"; distributing "financial statements to account contacts quarterly"; and "maintaining accurate and complete financial records."

14. Financial administrative support also included, among other things, "maintaining and updating financial binders;" responding "to inquiries by donors, account contacts, accountants, Blackbaud computer software personnel, credit card representatives, etc.;" maintaining and updating "Blackbaud 'The Raisers Edge' computer software system for donor record management;" preparing and distributing "donor thank you cards and tax receipts;" and overseeing the "credit card donation system."

15. As part of the Agreement, the Foundation reimbursed the University for a "mutually agreed upon percentage of any services provided to the Foundation by the University personnel."

16. Under the terms of this Agreement, the University was acting as the Foundation's agent and had a fiduciary duty to the Foundation with respect to matters that were within the scope of the University's agency.

17. Within months of becoming President of Lincoln University, in June 2018, Dr. Woolfolk sought to change the Agreement. On November 16, 2018, Dr. Woolfolk sent a letter to Hardy Dorsey, President of the Foundation, requesting a meeting on November 29, 2018 to discuss "the relationship between Lincoln University and the Lincoln University Foundation, Inc." and her "proposal to mutually agree upon an Affiliation Agreement that seeks to improve that relationship." **Ex. B** (November 16, 2018 Letter from J. Woolfolk to H. Dorsey). Specifically, Dr. Woolfolk desired to "transfer[] funds from the Foundation to the University." **Ex. B**; see also **Ex. D** (Letter from Dr. J. Woolfolk to H. Dorsey with proposed Memorandum of

4

Understanding attached).

18.     Dr. Woolfolk concluded her letter with a recognition that her letter might be "unsettling."

19.     Less than a month after Dr. Woolfolk's letter requesting a meeting to renegotiate the Agreement, the Chair of the University Board of Curators sent Mr. Dorsey a letter on December 14, 2018 notifying him of the termination of the Agreement effective December 31, 2018.  **Ex. C** (December 14, 2018 Letter from M. Teer to H. Dorsey).

20.     On January 17, 2019, Dr. Woolfolk provided the Foundation with a proposed Memorandum of Understanding, signed by her.  **Ex. D**.  Dr. Woolfolk requested that "[t]he signed Memorandum of Understanding" be returned to her "no later than February 18, 2019." Dr. Woolfolk's new memorandum provided that the Foundation "earmark annually 50% of its unrestricted funds for use by the President and shall transfer those funds annually to the President's discretionary fund …"  **Ex. D**.

21.     The Foundation responded to Dr. Woolfolk's proposed plan of action with a letter from its President on February 15, 2019 requesting a meeting to "fully discuss the relationship." **Ex. E** (February 15, 2019 Letter from Dorsey to Woolfolk).

22.     On February 20, 2019, Jacqueline Shipma, Counsel for the University, sent Dorsey a letter titled "Cease & Desist."  **Ex. F** (Letter from Shipma to Dorsey, February 20, 2019).  The "Cease & Desist" letter notified the Foundation that the proposed offer to renegotiate the Agreement expired on February 18, 2019 and that "[b]ecause the Foundation rejected that offer [Woolfolk's proposed MOU], the University is ceasing all administrative services on behalf of the Foundation effective end of business March 22, 2019."

5

**B.  Transfer of Approximately $667,000 from the Foundation to University**

23.     Approximately eight (8) days after the University's counsel notified the Foundation that all administrative services provided by the University would be terminated, the University, in consultation with Joseph Simmons, who at that time was a Foundation board member, transferred approximately $667,000 from Foundation bank accounts to University bank accounts in violation of the Foundation's established procedures for the transfer of special purpose funds.

24.     On or about February 28, 2019, approximately $667,000 was transferred from Foundation bank accounts to University bank accounts in the following amounts: (1) check No. 12697 was written in the amount of $71,932.35; (2) check No. 12698 was written in the amount of $224,313.12; (3) check No. 12702 was written in the amount of $90,754.06; and (4) check No. 12704 was written in the amount of $280.173.52.  Each check was written on the same day, made payable to the same account, and invoiced with the same description which read "Moving Funds to LU Fund."

25.     These large transfers were uncommon transfers for the Foundation as generally transfer amounts were smaller dollar amounts, usually a couple thousand dollars but no more than $10,000.00.  Moreover, these transfers contravened long-standing Foundation procedures.

26.     In transferring the funds to University, Joseph Simmons acted in violation of Foundation procedures and beyond the scope of his authorization in that he: (1) transferred the $667,000 in funds without receiving requests that specified the purpose for which the funds were being transferred; and (2) issued checks in excess of $10,000 without notifying any other board member of the transfers.  Mr. Simmons was never authorized to transfer $667,000 in Foundation funds to the University for an unspecified purpose without informing any other Foundation board

6

Electronically Filed - Cole Circuit - October 15, 2019 - 03:22 PM

member.

27.    The Foundation's officers and other board members did not become aware of these unauthorized transfers until on or about March 8, 2019.  The Foundation's counsel, James Tippin, then sent a letter to Mr. Simmons requesting that he, among other things, explain the basis for the transfers and the reasons for the secrecy surrounding the transfers.  See **Ex. J** (March 8, 2019 Letter from J. Tippin to J. Simmons regarding unauthorized transfers).  The Foundation has never received any response to its letter.

28.    On March 22, 2019, at the direction of the Foundation President and with the full consent of the Foundation Board, the Foundation's counsel sent Mr. Simmons a letter informing him that he had "been removed from the Foundation Board of Directors."  **Ex. K** (March 22, 2019 Letter from J. Tippin to J. Simmons regarding removal from Board of Directors).  Mr. Simmons' removal was in response to his unauthorized transfer of over $667,000 of Foundation funds to the University.

29.    On or about, March 15, 2019, approximately two weeks after Mr. Simmons made the unauthorized transfers of funds from the Foundation to the University, he "was hired by Lincoln University as a casual, part-time employee . . . [to work] on special projects as assigned by the president."  **Ex. L** (April 13, 2019, Jefferson City News Tribune Article, "Lincoln University rehires administrator on part-time basis).  Mr. Simmons was to be paid $14,000 for his work on "special projects."  **Ex. L**

30.    The $667,173.05 in funds were transferred from Foundation accounts that, pursuant to agreements entered into by donors, the Foundation, and the University, were to be established within the Foundation and were to be administered by the Foundation ("Donor Agreements").  See **Ex. G** (four sample written Donor Agreements) **(filed under seal)**.  Some of

7

the Donor Agreements were formalized in written memoranda of understanding and others were to be administered based on oral agreements.

31.     On or about May 13, 2019, the Greater Kansas City Lincoln University Alumni Association sent a letter to Dr. Woolfolk requesting that "all funds of the Greater Lincoln University Alumni Association, endowed, unrestricted, special or any other category . . . remain or be returned to the 62nd and 65th Regiments Legacy Foundation Inc."  See **Ex. M** (May 13, 2019 Letter from R. Coleman, President of Greater Kansas City Alumni Association, to Dr. J. Woolfolk regarding Kansas City Alumni Chapter donations).

32.     On or about May 18, 2019, the Lincoln University Atlanta Alumni Chapter, Inc. sent a letter to Dr. Woolfolk stating: "We have no direct deposits made to the university unless they are authorized transfers of funds from the Foundation to the University or other account holders in the foundation by the chapter.  As such, if any funds have been removed from any of our foundation accounts to the university without our authorization, they are to be returned immediately without question."  **Ex. N** (May 18, 2019 Letter from Dr. S. Bonds, President of Lincoln University Atlanta Alumni Chapter, to Dr J. Woolfolk regarding Atlanta Alumni Chapter donations).  As a result of the unauthorized February 28, 2019 transfers, the University received in excess of $9,000 in Atlanta Alumni Chapter donations in breach of donor agreements.  **Ex. N**

33.     On June 5, 2019, The National Lincoln University Alumni Association wrote Dr. Woolfolk instructing  that "all funds of the Lincoln University Alumni Association, Inc. (endowed, unrestricted, special or any other category) are to remain or be immediately returned to the 62nd & 65th Regiments Legacy Foundation, Inc."  **Ex. O** (June 5, 2019 Letter from J. Johnson, National President for Lincoln University Alumni Association ("LUAA"), Inc., to Dr.

8

J. Woolfolk regarding LUAA donations).

### C. The Foundation's Request for the Return of Foundation Documents.

34.     On March 22, 2019, James Tippin, the Foundation's counsel and a former longtime Foundation board member, sent a letter to the University on behalf of the Foundation requesting that the University deliver all Foundation documents, information and property that was in the University's possession to the Foundation.  See **Ex. H** (March 22, 2019 Letter from J. Tippin to J. Shipma regarding the return of Foundation property).  The requested documents, information and property, included but was not limited to: (1) the Foundation's donor list, donor history and donor database; (2) Foundation bank statements; (3) financial records such as tax returns and independent audits; (4) computer software used for financial management; and (5) memoranda of understanding between the Foundation and its donors.  The Foundation requested "[a]n accounting for all disbursements from those transferred funds, to include but not limited to supporting documents."  The Foundation further requested that the University confirm that it had not retained any of the Foundation's donor information or documents.

35.     On April 2, 2019, Shipma responded by letter to the Foundation's March 22, 2019 letter.  **Ex. I** (April 2, 2019 Letter from J. Shipma to J. Tippin).  The letter stated that "for a variety of legal and other reasons," the University would not be able to certify that it "has not retained information on donor records as most of the records also involve the University" and that the request for resolutions and other Board of Curator action "are closed records under" the Sunshine Law.

36.     On April 8, 2019, the University sent Mr. Tippin an email supplementing its responses in its April 2, 2019 letter.  The email noted that the University had provided copies of some of the requested documents to the Lincoln University Police Department for the

Foundation's retrieval.

37.     The University produced some, but not all the documents responsive to the Foundation's March 22, 2019 request.  The University's document production failed to include, among other things, (1) the Foundation's donor list; (2) information sufficient for it to access the Raiser's Edge database (software that was purchased with Foundation funds), which is the donor and fundraising management system that is used to manage all of the Foundation's fundraising and disbursements; and (3) documents and information sufficient to fully account for the transferred funds.

38.     On April 29, 2019, the Foundation's counsel renewed the Foundation's requests that: (1) all documents and information belonging to the Foundation be immediately delivered to the Foundation; and (2) the University agree not to use or retain any Foundation documents or donor information.

39.     As a result of the University's failure to fully comply with the Foundation's March 22, 2019 and April 29, 2019 requests, the Foundation was unable to: (1) establish administrative functions to continue its work fundraising and supporting the University and its students; and (2) fully account for the $667,173.05 transfer of Foundation special purpose funds to the University Advancement Office.

### Count I (Breach of Donor Agreements)

40.     Plaintiff reincorporates by reference the allegations contained in paragraphs 1 through 39 above as if fully set forth herein.

41.     The University entered into Donor Agreements with the Foundation and Foundation donors for the establishment of special purpose funds to be held within the Foundation.

42.     Under the terms of the Donor Agreements, the Foundation and the University further agreed that: (1) the funds would be administered by the Foundation; and (2) the funds would be utilized for the purpose that was specified in the Donor Agreements.

43.     The University breached the Donor Agreements by: (1) improperly inducing Mr. Simmons to transfer $667,173.05 of Foundation funds, which were being administered pursuant to the terms of the Donor Agreements, to the University; and (2) improperly accepting $667,173.05 of funds, which were being administered by the Foundation pursuant to the terms of the Donor Agreements, into University bank accounts.

44.     The Foundation and donors had performed all of their duties, obligations and conditions precedent under the terms of the Donor Agreements.

45.     The University failed to perform its obligations under the terms of the Donor Agreements when it improperly induced Mr. Simmons to transfer $667,173.05 of special purpose funds that were held pursuant to Donor Agreements and improperly accepted the transfer of those funds into University accounts.

46.     The University's failure to perform its obligations damaged the Foundation in that it: (1) has caused the Foundation to be deprived of the $667,173.05 in donor funds; (2) has caused the Foundation to be unable to fulfill its obligation to administer those funds pursuant to the terms of the Donor Agreements; and (3) has disrupted the Foundation's ability to continue its operations and raise funds.

47.     The Foundation has suffered damages as a direct result of Defendant's breach of the Donor Agreements in excess of $25,000 which will be proven at trial.

        WHEREFORE, the Foundation prays for judgment against the University in Count I herein in a sum in excess of Twenty-Five Thousand Dollars ($25,000), for direct,

11

consequential, incidental damages, and punitive damages, for attorneys' fees and costs incurred herein, for pre-judgment and post-judgment interest, and for such other and further relief as the Court deems just and proper.

## Count II (Breach of Foundation Agreement)

48.     Plaintiff reincorporates by reference the allegations contained in paragraphs 1 through 47 above as if fully set forth herein.

49.     The University entered into the Agreement with the Foundation in which the University agreed to provide the Foundation administrative support for the purpose of fundraising for the benefit of the University and its students.

50.     In exchange for the University's agreement to provide administrative support, the Foundation agreed to solicit and raise funds in support of the University and its students and to reimburse the University for a percentage of the cost of the administrative services that University staff provided to the Foundation.

51.     The Foundation performed all of its duties, obligations and conditions precedent under the terms of the Agreement.

52.     The University failed to perform its obligations under the Agreement when it unilaterally terminated its agreement with the Foundation and failed to provide the administrative support necessary to transfer the documents and information belonging to the Foundation, as the Foundation requested in letters of March 22, 2019 and April 29, 2019.

53.     The University further failed to perform its obligations under the Agreement by failing to make any effort to responsibly transition administrative responsibilities to Foundation.

54.     The University's failure to perform its obligations damaged the Foundation in that it has caused the Foundation to be unable to: (1) disburse scholarships to deserving University

students; (2) continue its fundraising operations; (3) account for donor gifts that were entrusted to the Foundation; (4) communicate with its donors; and (5) administer approximately $667,000 in special purpose donations that the University wrongfully removed from Foundation bank accounts.

55.     The Foundation has suffered damages as a direct result of the University's breach of the Agreement in excess of $25,000 which will be proven at trial.

WHEREFORE, the Foundation prays for judgment against the University in Count II herein in a sum in excess of Twenty-Five Thousand Dollars ($25,000), for direct, consequential, incidental damages and punitive damages, for attorneys' fees and costs incurred herein, for pre-judgment and post-judgment interest, and for such other and further relief as the Court deems just and proper.

### COUNT III (Breach of Implied Covenant of Good Faith and Fair Dealing)

56.     Plaintiff reincorporates by reference the allegations contained in paragraphs 1 through 55 above as if fully set forth herein.

57.     As set forth above, the Foundation entered into the Agreement and performed its obligations under the terms of the Agreement.

58.     The Agreement imposes on each party a duty of good faith and fair dealing in its performance.

59.     The University breached its duty of good faith and fair dealing by: (1) unilaterally terminating its agreement with the Foundation and failing to provide the administrative support necessary to transfer the documents and information belonging to the Foundation to the Foundation, as requested in the Foundation's March 22, 2019 and April 29, 2019 letters; and (2) failing to perform its obligations under the Agreement by seeking to retain and use Foundation

donor information, documents, and approximately $667,000 in donor funds.

60.    The University exercised judgment and discretion conferred by the Agreement in such a manner as to evade the spirit of the transaction or so as to deny the Foundation the expected benefit of the Agreement.

61.    As a direct result of the University's breaches of the Agreement and the implied covenant of good faith and fair dealing, the Foundation is damaged in an amount in excess of $25,000.

WHEREFORE, the Foundation prays for judgment against the University in Count III herein in a sum in excess of Twenty-Five Thousand Dollars ($25,000), for direct, consequential, incidental damages, and punitive damages, for attorneys' fees and costs incurred herein, for pre-judgment and post-judgment interest, and for such other and further relief as the Court deems just and proper.

## Prayer for Relief

WHEREFORE, the Foundation prays for judgment against the University in Counts I through III herein in a sum in excess of Twenty-Five Thousand Dollars ($25,000) for each, for direct, consequential, incidental, and punitive damages, for attorneys' fees and costs incurred herein, for pre-judgment and post-judgment interest, and for such other and further relief as the Court deems just and proper.

The Foundation further prays that Lincoln University be temporarily, preliminarily, and permanently enjoined and restrained from: (1) retaining, using or disclosing any documents or information it has obtained as a result of performing its obligations under the Agreement; (2) withholding the Foundation's documents, information and assets currently in its possession from

14

the Foundation; and (3) expending any of the $667,173.05 in Foundation special-purpose funds

that were transferred into a University account in February.


Dated: October 15, 2019                                Respectfully submitted,

                                                       DOWD BENNETT, LLP

                                                       By: \s\ Gabriel E. Gore_____
                                                       Gabriel E. Gore, 45416
                                                       Jeffrey R. Hoops, 69813
                                                       7733 Forsyth Blvd., Suite 1900
                                                       St. Louis, Missouri 63105
                                                       314-889-7300 (phone)
                                                       314-863-2111 (facsimile)
                                                       ggore@dowdbennett.com
                                                       jhoops@dowdbennett.com

                                                       *Attorneys for Plaintiff 62nd & 65th Legacy
                                                       Regiments Foundation*



## CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2019, a true and correct copy of the foregoing was

served on all counsel of record via the Missouri Court's electronic filing system.


\s\ Gabriel E. Gore

**VERIFICATION**

I, James W. Tippin, state under penalty of perjury that I am in-house counsel for the 62nd

& 65th Regiments Legacy Foundation and am authorized to make this verification on its behalf,

and that the facts contained in the foregoing Amended Petition are true, accurate and complete

according to my best knowledge, information, and belief, except as to matters therein stated to be

on information and belief.

By: _____
      James W. Tippin

State of Missouri        )
                           ) ss.
County of Jackson       )

On this 15th day of July, 2019, before me personally appeared James W. Tippin, and
to me known to be the person described in and who executed the foregoing instrument.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed by notarial seal
in the County and State aforesaid, the day and year first above written.

_____
Notary Public
Printed Name:   *Keith A. Cutler*

My term expires:

```
KEITH A. CUTLER
Notary Public - Notary Seal
State of Missouri
Commissioned for Jackson County
My Commission Expires: February 18, 2020
Commission Number: 12440882
```

# EXHIBIT A

Electronically Filed - Cole Circuit - October 15, 2019 - 03:22 PM

MEMORANDUM OF UNDERSTANDING
LINCOLN UNIVERSITY BOARD OF CURATORS AND
THE LINCOLN UNIVERSITY FOUNDATION, INC.

This memorandum of Understanding ("MOU") was made and entered into as of the first day of June, 2000, and is amended as of September _10_, 2015. The Memorandum of Understanding is by and between the Board of Curators of Lincoln University, a public corporation created and existing under the law of the State of Missouri, hereinafter referred to as "Curators" or "The University," and Lincoln University Foundation, Inc., a not-for-profit corporation organized under Chapter 355 of the Revised Statutes of Missouri, 1994, hereinafter referred to as the "Foundation."

Pursuant to the MOU, the Foundation and the Curators recognize that the Foundation is the primary external fundraising entity of the University and its Curators. The Foundation exists for the sole purpose of supporting the University in its role as an institution of higher learning in the State of Missouri. The Curators have determined that the execution of the MOU will: (1) clarify the purpose for existence of the Foundation, (2) be beneficial to the University in discharging its obligations in furtherance of its purpose and mission, and (3) will facilitate the Foundation in encouraging, soliciting, receiving and administering gifts and bequests of property for the benefit of the University.

The primary mission of the Foundation is to solicit and raise private funds in support of the University. Further, the Foundation has a fiduciary responsibility to prudently manage any funds it raises on behalf of the University. To this end, the MOU specifies the administrative support which the University will provide to the Foundation to assist it in fulfilling its responsibilities.

During the time in which this MOU shall be in effect, the University will provide the following administrative support to the Foundation:

    A. Physical Facilities

        1. Office space
        2. Local telephone service
        3. Utilities
        4. Office furniture
        5. Other such facilities as may be necessary from time to time

    B. General Administrative

        1. Employ an individual (Executive Director) to provide general direction and oversight for the Foundation. Further, this person will act as a liaison between the University and the Foundation. His/her salary will be paid by Lincoln University; however, the University reserves the authority to, in its sole discretion, request, and the Foundation agrees to provide, reimbursement of a mutually agreed upon percentage of the Executive Director's salary.

Electronically Filed - Cole Circuit - October 15, 2019 - 03:22 PM

authorized to accept, honor, cash and pay, without limit as to amount, all checks, drafts or other instruments or orders for the payment of money, when drawn, made or signed by officers or agents so designated by the Board until written notice of the revocation of the authority of such officers or agents by the Board shall have been received by such bank or trust company. There shall from time to time be certified to the banks or trust companies in which funds of the Foundation are deposited, the signature of the officers or agents of the Foundation so authorized to draw against the same. If the Board fails to designate the persons by whom checks, drafts and other instruments or orders for the payment of money shall be signed, then they shall be signed by any two of the President, a Vice-President, the Secretary or Treasurer, if the amount of such checks, drafts and other instruments or orders for the payment of money is $750 or greater, otherwise by any one of such officers. By resolution of the Board adopted by a majority of the voting Directors, the Board may authorize additional officers or agents of the Foundation to sign checks, drafts and other instruments or orders for the payment of money under specified and limited circumstances.

5. Method of Board and Committee Action. Unless specifically required by these Bylaws, the Articles or by law to be taken or instituted by resolution, any action of the Board or any committee may be taken by motion.

6. Use of Words - Whenever words are used or terms defined herein in the singular, such words and definitions shall be construed also as if used in the plural in all cases where they would so apply, and wherever words are used or terms defined herein in the masculine gender, such words and definitions shall be construed also as if used in the feminine gender.

**ARTICLE XI1**
**Review and Amendment of Bylaws**

These Bylaws may be amended, repealed or replaced by a majority of the voting Directors, provided that the substance of the proposed amendment, repeal or replacement is stated in the notice of the Board meeting at which such matter is to be considered and acted upon. These Bylaws should be reviewed periodically by the Secretary of the Board of Directors and the Executive Committee, who should recommend any necessary changes to the Board of Directors.

**ARTICLE XI11**
**Effective Date**

The foregoing Bylaws were adopted by the Board of Directors of the Lincoln University Foundation on _____, 2018, and amend and supersede all prior Bylaws of the Foundation.

16

B.      General Administration, continued

2. Maintain accurate and complete Foundation files, including historical and current records.
3. Manage Foundation-sponsored scholarships.
4. Respond to inquiries by campus offices and students.
5. Make Foundation travel arrangements.
6. Handle correspondence, research, and other Foundation business.

C.      Financial Administration

1. Receive and process deposits, including cash. checks, credit card transactions. gifts-in-kind, matching gifts, etc.
2. Process disbursement vouchers and prepare disbursements.
3. Distribute financial statements to account contacts quarterly
4. Maintain accurate and complete financial records.
5. Maintain and update financial binders.
6. Process corporate matching gift applications.
7. Respond to inquiries by donors. account contacts, accountants. Blackbaud computer software personnel, credit card representatives, etc.
8. Research account histories and financial transactions.
9. Maintain and update Blackbaud "The Raisers Edge" computer software system for donor record management.
10. Prepare and distribute donor thank you cards and tax receipts.
11. Oversee credit card donation system.

Notwithstanding the University's commitment to provide administrative support as outlined in sections A-C above, the University reserves the authority to request, and the Foundation agrees to provide. reimbursement of a mutually agreed upon percentage of any services provided to the Foundation by University personnel or equipment or goods provided to it by the University.

This MOU shall remain in effect until such time as it is rescinded. terminated or otherwise made null and void by action of the Lincoln University Board of Curators or the Lincoln University Foundation. Inc.

Rita Heard Days, President
Lincoln University Foundation, Inc

Dr. Don Cook, President
Lincoln University Board of Curators

Date

Date    9/10/15

Electronically Filed - Cole Circuit - October 15, 2019 - 03:22 PM

# EXHIBIT B

Electronically Filed - Cole Circuit - October 15, 2019 - 03:22 PM

**LINCOLN UNIVERSITY**

Office of the President

820 Chestnut Street
Jefferson City, MO 65101

Phone: (573) 681-5042
Fax:    (573) 681-6074

Private and confidential

November 16, 2018

Mr. Hardy K. Dorsey, Sr., President
100 Black Water Ct NW
Sandy Springs, Georgia 30328

Dear Mr. Dorsey:

I would like to schedule a meeting with you on November 29, 2018 at 2:00 p.m. in my office to discuss the relationship between Lincoln University and the Lincoln University Foundation, Inc. and my proposal to mutually agree upon an Affiliation Agreement that seeks to improve that relationship. The meeting will include Carlos Graham, Chief of Staff/Executive Assistant to the President; Dr. Darrol Woods, Assistant Vice President for Administration and Finance/Controller; Dr. Earl Wheatfall and University Legal Counsel, Todd Miller. You are free to bring any representatives or other support persons you choose to our meeting, and I strongly encourage you to do so. Please confirm that you are able to attend the meeting on the date and time provided by Monday, November 19, 2018 at 3:00 p.m. or suggest an alternative date or time.

Until now, it appears as though the University has taken an informal approach to the operations of the Foundation and the improvement of the Foundation's performance. It is the responsibility of the University to provide guidance and support to assist in these efforts. I do not think that its performance has improved to a satisfactory level and I am proposing to take a more structured, formal approach to working with the Foundation on its performance issues.

My issues of concern relate in part to the following:

- Growing the Foundation assets to an acceptable level;

- Receiving reimbursement from the Foundation for expenditures by the University for Foundation administration;

- Transferring of funds from the Foundation to the University;

- Training for Foundation Board members;

- A general concern that the Foundation may believe that it is autonomous of the University.

*Founded 1866: 62nd & 65th Colored Infantries*
*An equal opportunity institution*

I am proposing that the University and the Foundation put in place a new Affiliation Agreement. The purpose of the Agreement is to help the Foundation achieve an increased level of performance and to provide clarification on the University's role and relationship with the Foundation.

I am in the process of developing a draft Affiliation Agreement which I will send to you in a separate email prior to our scheduled meeting. At the meeting you will be able to:

- Give your feedback on the Agreement and suggest any changes you would like to make;

- Give any explanations or comments you have about the issues and concerns I have raised; and

- Provide your view on the relationship between the Foundation and the University as well as any concerns you may have.

After the meeting, I will discuss the details of our meeting with my Cabinet as I am sure you will discuss the details with the Foundation's Board. After these discussions, if I still believe that the University would be better served under the terms of the new Affiliation Agreement with the Foundation, I will finalize the Agreement, taking your feedback into consideration, and provide you with a copy for your signature.

I realize that this may be an unsettling letter for you, and it is just as unsettling for me. However, my responsibility is to ensure that all aspects of the University are operating according to best practices in higher education. The original purpose of the Foundation was to "...encourage, solicit, receive and administer gifts and bequests of property...for the use or benefit of Lincoln University..." If we work together in a more efficient and structured manner, I believe we can better achieve the Foundation's original purpose. If you have any questions or concerns, please contact me directly. *"WE ARE LINCOLN!"*

Sincerely,

Jerald Jones Woolfolk, Ph.D.
President

# EXHIBIT C

Electronically Filed - Cole Circuit - October 15, 2019 - 03:22 PM



# LINCOLN UNIVERSITY

**Board of Curators**

P.O. Box 29
Jefferson City, MO 65102-0029

Phone: (573) 681-5044
FAX:    (573) 681-6074

*Marvin O. Teer, Jr., President*
*Frank J. Logan, Sr., Vice President*
*Greg S. Gaffke, Secretary*
*Dana Tippin Cutler, Treasurer*
*Don W. Cook, Sr.*
*Herbert E. Hardwick*
*Winston J. Rutledge*

December 14, 2018

Mr. Hardy K. Dorsey, Sr., President
Lincoln University Foundation, Inc.
100 Black Water Ct., NW
Sandy Springs, GA 30328

Dear Mr. Dorsey:

Effective December 31, 2018, the Board of Curators of Lincoln University makes null and void its Memorandum of Understanding with the Lincoln University Foundation, Inc. dated September 10, 2015 and signed by Rita Heard Days and Curator Don Cook. Additional information will be forthcoming from Lincoln University President, Dr. Jerald Jones Woolfolk, which will indicate a proposed plan of action for the new Memorandum of Understanding.

Sincerely,

Marvin O. Teer, Jr., President
Lincoln University Board of Curators

*Founded 1866: 62nd & 65th Colored Infantries*
*An equal opportunity institution*

# EXHIBIT D

Electronically Filed - Cole Circuit - October 15, 2019 - 03:22 PM

**LINCOLN UNIVERSITY**

Office of the President

820 Chestnut Street
Jefferson City, MO 65101

Phone: (573) 681-5042
Fax:    (573) 681-6074

January 17, 2019

Mr. Hardy K. Dorsey, Sr.
100 Black Water Ct. NW
Sandy Springs, Georgia  30328

Dear Mr. Dorsey,

Please find attached a copy of the new Memorandum of Understanding between Lincoln University and the Lincoln University Foundation for your review.  If you have any questions or concerns, please let me know.  The signed Memorandum of Understanding should be returned to me no later than February 18, 2019.  I look forward to a renewed and productive relationship with the Lincoln University Foundation.  **"WE ARE LINCOLN!"**

Sincerely,

Jerald Jones Woolfolk, Ph.D.
President

*Founded 1866: 62nd & 65th Colored Infantries*
*An equal opportunity institution*

Electronically Filed - Cole Circuit - October 15, 2019 - 03:22 PM

# MEMORANDUM OF UNDERSTANDING
# LINCOLN UNIVERSITY OF MISSOURI AND
# THE LINCOLN UNIVERSITY FOUNDATION, INC.

This Memorandum of Understanding ("MOU") is entered into by and between Lincoln University of Missouri, a public corporation created and existing under the laws of the State of Missouri, hereinafter referred to as "the University," and Lincoln University Foundation, Inc., a not-for-profit corporation organized under the laws of the State of Missouri and Section 501(c)(3) of the Internal Revenue Code, hereinafter referred to as the "the Foundation" on this _____ day of _____, 2019 and supersedes any prior MOU entered into between the University or the Board of Curators of Lincoln University and the Foundation. Any reference to "President" in this MOU shall mean the President of the University.

**WITNESSETH:**

**WHEREAS,** the Foundation is a legal entity separate from the University; and

**WHEREAS,** the Foundation is the primary external fundraising entity of the University; and

**WHEREAS,** the Foundation exists and operates exclusively for the sole purpose of supporting the University in its role as an institution of higher learning in the State of Missouri; and

**WHEREAS,** the primary mission of the Foundation is to solicit and raise private funds in support of the University; and

**WHEREAS,** the Foundation has a fiduciary responsibility to the University to prudently manage any funds it raises or receives; and

**WHEREAS,** the University and the Foundation desire to formalize their relationship by setting forth the manner in which the University is to provide support to the Foundation and in which the Foundation is to provide support to the University.

**NOW, THEREFORE,** in consideration of the mutual covenants, promises, and conditions herein contained, and for good and valuable consideration, the adequacy of which is hereby acknowledged, the Foundation and University do hereby agree as follows:

1. The Foundation is recognized as an affiliate acting as a donor organization authorized by the University to solicit gifts, donations, and grants on its behalf for the purpose of supporting and enhancing the University and its programs.

2. Neither the Foundation nor the University shall have any liability for the obligations, acts or omissions of the other party. The Foundation shall not accept any gift, donation, or grant which creates future liability for the University, without advance written approval by the President.

1

3. The Foundation shall present evidence satisfactory to the President of insurance or self-insurance adequate in form and amount to cover foreseeable liability arising from activities undertaken for the benefit of the University.

4. The Foundation shall make provision in its articles of incorporation and bylaws for the distribution of assets of the Foundation to the University in the event of dissolution, after payment of creditors, pursuant to law.

5. Upon termination of the Foundation's relationship with the University, the Foundation shall be prohibited from using the name, symbols or service marks of the University and shall transfer all records to the University.

6. The Foundation agrees that the President of the University shall be an ex officio member of the Board of Directors of the Foundation with full voting rights and shall serve on the Executive Committee of the Foundation's Board. Additionally, the President shall have the authority to appoint 10 members to the Foundation's Board.

7. The Foundation agrees that the President of the Lincoln University Alumni Association shall be an ex officio member of the Board of Directors of the Foundation with full voting rights.

8. The Foundation agrees that the Executive Director of the Foundation shall be an ex officio member of the Board of Directors of the Foundation, but shall not have voting rights.

9. The Foundation shall continue to maintain support of the University as its sole purpose. In accordance with the Foundation's governing documents, that support includes, but is not limited to:

   a. Raising, soliciting, receiving, investing, distributing, and administering funds for the University to use for its educational, research, and community purposes;

   b. Assisting the President, faculty, staff, and students of the University in achieving their goals and objectives;

   c. As mutually agreed by the parties, performing other acts as may be deemed appropriate in carrying out the purposes of the University, consistent with the Foundation's mission and resources.

10. The Foundation agrees that it shall maintain its status as a tax-exempt non-profit corporation under the Internal Revenue Code, Section 501(c)(3), and the general non-profit law of Missouri and conduct its affairs accordingly.

11. The Foundation shall present annually to the President an annual independent audit report of the Foundation. The audit report shall include financial statements, a management letter, and an audit opinion that addresses the conformance of the

2

operating procedures of the Foundation to the provisions of this MOU, Board policy and applicable law.

12. The Foundation acknowledges that the University is governed by the Board of Curators of Lincoln University, and therefore is required to comply with its rules and regulations pertaining to University affairs.

13. The Foundation shall indemnify and hold harmless the University, its governing board, officers, employees, agents, and students in their official and personal capacities, from and against any and all claims, damage, liability, injury, expense, demands, and judgments, including court costs and attorney's fees, arising out of the Foundation's performance of this MOU, except for injury or damage caused by the sole negligence of the University.

14. The University authorizes the Foundation to use the name, symbols and service marks of the University in seeking private gifts, grants, and in activities carried out for the benefit of the University. In so doing, the Foundation shall make clear its relationship as a separate legal entity from the University.

15. The Foundation agrees to maintain the following standards in handling funds and in conducting its business:

    a. *Funds Donated to the University.* At its discretion, the University may designate the Foundation as its agent to hold and manage funds donated to and solely in the name of the University. The Foundation shall separately account for such funds, shall hold and manage such funds in accordance with the donor's intent, and with the same care applicable to fiduciaries of charitable trust funds.

    b. *Foundation as Trustee.* Funds granted to the Foundation in trust for the benefit of the University, its students, affiliates or other related entities shall be handled in accordance with the intent of the donor and applicable law.

    c. *Annual Budget.* Following any necessary consultation with the University, the Foundation shall prepare an annual corporate operating budget and provide a copy to the President by July 31st each year.

    d. *Business Accounts and Records.* The Foundation shall operate and maintain its accounting, development activities, and record keeping in a prudent and generally acceptable standard.

16. The University shall provide reasonable budgetary support, administrative services, and staffing to support mutually agreed upon fundraising efforts and to support administration of the Foundation.

3

a. *Staff Support.* The University agrees to adequately budget funds to cover the operational expenses and pay salaries and fringe benefits for the University's Institutional Advancement staff, as determined by the University.

    i. The University's Vice President of Institutional Advancement shall serve as Executive Director of the Foundation, and as such shall provide general direction and oversight for the Foundation, and shall act as a liaison between the University and Foundation.

    ii. The Foundation agrees to provide reimbursement of a mutually agreed upon reasonable percentage of the Executive Director's salary and of the costs of personnel services provided by the University as determined by the President.

    iii. Institutional Advancement staff, including the Executive Director, shall be employees of the University and as such shall be subject to the applicable University personnel policies and procedures.

    iv. Institutional Advancement staff shall provide the following services to the Foundation:

        1. General Administrative Support

           a. Maintaining accurate and complete Foundation files, including historical and current records.

           b. Managing Foundation-sponsored scholarships, including the choice of recipients in conformity with the wishes of the donors.

           c. Responding to inquiries from campus offices and students.

           d. Making Foundation travel arrangements.

           e. Handling Foundation correspondence, research and other Foundation business at the discretion of the President.

        2. Financial Administration

           a. Receiving and processing deposits, including, but not limited to cash, checks, credit card transactions, gifts-in-kind, and matching gifts.

4

b. Processing disbursement vouchers and preparing disbursements.

c. Distributing financial statements to account contacts on a quarterly basis.

d. Maintaining accurate and complete financial records.

e. Maintaining and updating financial binders.

f. Processing corporate matching gift applications.

g. Responding to inquiries by donors, account contacts, accountants, donor record management software personnel, credit card representatives, etc.

h. Researching account histories and financial transactions.

i. Maintaining and updating a computer software system for donor record management.

j. Preparing and distributing donor "thank you" cards and tax receipts.

k. Overseeing credit card donation system.

b. *Physical Facilities.* At the discretion of the President, the University agrees to provide office space, local telephone service, utilities, office furniture and such other facilities as may be necessary from time to time for the administration of the Foundation. The Foundation agrees to provide reimbursement of a mutually agreed upon reasonable percentage of the cost of goods and services provided by the University, as determined by the President.

17. The Foundation shall provide the University with comprehensive fundraising services.

a. *Planning.* Fundraising shall be consistent with the University priorities and strategic plan, as communicated to the Foundation by the President. The University will coordinate fundraising initiatives, programs, and campaigns, including major gift solicitations, with the Foundation

b. *University Participation.* The President shall assume a prominent role in fundraising activities. Additionally, the University shall make available key personnel as deemed necessary by the President in assisting the Foundation with its fundraising and other developmental efforts.

5

   c.  *Donor Research.* The Foundation shall identify individuals and other entities interested in supporting the University. The Foundation shall operate in a discrete and professional manner so as to ensure confidentiality of information related to such individual and entities. The President and other University personnel as designated by the President will work with the Foundation to identify, cultivate and solicit prospects for private gifts for the benefit of the University.

   d.  *Fundraising.* The Foundation shall assist the University on mutually accepted fundraising projects according to University assigned priorities.

   e.  *Gift Acceptance.* The Foundation and the University shall adopt mutually acceptable gift acceptance guidelines that assure gifts are solicited consistent with the University's mission, can be managed by the Foundation and/or University in accordance with the donor's intent, and minimize exposure to unnecessary risk.

   f.  *Annual Gift Report.* The Foundation shall provide the President with an annual report of giving summary by July 31st each year.

   g.  *Distribution of Gifts.* The Foundation and the University shall adopt mutually acceptable gift distribution guidelines that assure gifts are distributed consistent with the University's mission and the donor's intent, federal and state law, and minimize exposure to unnecessary risk. The Foundation shall earmark annually 50% of its unrestricted funds for use by the President and shall transfer those funds annually to the President's discretionary fund in compliance with state law and University policies.

18. The University shall adopt a gift naming policy to honor financial gifts received from donors or in recognition of those making significant contributions that advance the mission of the University. The University, with input from the Foundation, will identify buildings, rooms, landscape, and other key structures on campus that fittingly may be used to provide naming opportunities in conformity with the gift naming policy.

19. The Foundation and University shall jointly establish gift-acceptance policies and policies for the establishment of scholarships, chairs, and other endowments.

20. The Foundation and University shall make every reasonable effort to eliminate any potential conflict of interests, including any appearance of impropriety, by University employees in Foundation operations and transactions, and in the relationship between the University and the Foundation.

6

21. The Foundation and University agree to cooperate and provide an environment of open communications so as to work together to enhance the success of goals mutually shared by both parties.

22. Upon termination of this MOU, and any time thereafter, the University has the option of requiring that all Foundation funds and investments existing at the time of termination be transferred to the University. This shall be a continuing right of the University and shall survive termination of the MOU.

This MOU shall be in effect until such time as either the University or the Foundation gives notice of termination.

IN WITNESS WHEREOF, Lincoln University of Missouri and the Lincoln University Foundation, Inc. have executed this Memorandum of Understanding on this _____ day of _____, 2019.

THE LINCOLN UNIVERSITY
FOUNDATION, INC.

THE LINCOLN UNIVERSITY
OF MISSOURI

_____
Hardy K. Dorsey, Sr., President
The Lincoln University Foundation, Inc.

Date: _____

_____
Jerald J. Woolfolk, President
The Lincoln University of Missouri

Date: _1_/_17_/_19_

7

Electronically Filed - Cole Circuit - October 15, 2019 - 03:22 PM

# EXHIBIT E



LINCOLN UNIVERSITY FOUNDATION, INC.
*A tax exempt, not-for-profit corporation*

·203 Young Hall • 820 Chestnut Street
Jefferson City, MO 65101
Phone: (573) 681-6070
Fax: (573) 681-5981

February 15, 2019

Dr. Jerold J. Woolfolk
820 Chestnut Street
Jefferson City, Mo. 65101

Dear Dr. Woolfolk,

You will find attached the Foundation Board's committed response to your MOU initiative. Considering pending events, actions and consequences, it is paramount that you and I meet preferably within the next few weeks to fully discuss this relationship. I trust the fruit of this meeting will produce a mutual understanding. Looking forward to a renewed and productive relationship with the University.

Sincerely,

Hardy K Dorsey, Sr.

Hardy K. Dorsey, Sr.
Foundation President

*Founded 1866: 62nd & 65th Colored Infantries*
*An equal opportunity institution*

# EXHIBIT F



**LINCOLN UNIVERSITY**

Office of Legal Counsel

820 Chestnut Street
Jefferson City, MO 65101

Phone: (573) 681-5061
Fax:    (573) 681-6074

February 20, 2019

Mr. Hardy K. Dorsey, Sr., President
Lincoln University Foundation, Inc.
100 Black Water Ct., NW
Sandy Springs, GA 30328

Re: CEASE & DESIST

Dear Mr. Dorsey,

On behalf of Lincoln University ("University"), this correspondence serves as notice to Lincoln University Foundation, Inc. ("Foundation") that all affiliation between the University and the Foundation ceased as of December 31, 2018 pursuant to a letter dated December 14, 2018 signed by Marvin O. Teer, Jr., President of the Lincoln University Board of Curators, and sent to you as President of the Foundation. In an attempt to re-establish an affiliation that was within legal bounds and financially prudent standards, the University offered a new Memorandum of Understanding to the Foundation, by letter addressed to you on January 17, 2019. Pursuant to that letter, the offer expired on February 18, 2019. Because the Foundation rejected that offer, the University is ceasing all administrative services on behalf of the Foundation effective end of business March 22, 2019.

Additionally, this correspondence serves as notice that the Foundation immediately must cease and desist all use of the name, symbols and service marks of the University. Any use of the University's name, symbols or service marks from the date of this letter shall be considered trademark and copyright infringement. The University will pursue all available and appropriate legal action in the event the Foundation fails to heed this notice.

If you have any questions, please direct them to me.

Sincerely,

Jacqueline D. Shipma
Legal Counsel

*Founded 1866: 62nd & 65th Colored Infantries*
*An equal opportunity institution*

Ortmeyer, Rose Ann
<ortmeyr@lincolnu.edu>Sent:
Wednesday, February 20, 2019
04:49:20 PM
ESTSubject: Regarding Lincoln
University Foundation, Inc.

Mr.
Dorsey,

Please
see the attached correspondence.

Thank
you.

Jacqueline
Shipma
Legal Counsel
(p) 573-681-5061
ShipmaJ@lincolnu.edu

www.lincolnu.edu

NOTICE: This electronic mail
message and any attachments may contain attorney-client privileged or otherwise confidential information.
Recipients should ensure that proper security measures are taken to maintain any privileged or confidential
information. If you are not an intended recipient of this electronic mail message as listed above, please notify Lincoln
University Legal Counsel (ShipmaJ@lincolnu.edu)
immediately and delete or destroy the electronic message and all printed copies. The unauthorized disclosure of
privileged or otherwise confidential information is strictly prohibited. All recipients are hereby notified that
(1) electronic mail is not secure,
(2) any electronic mail sent to or received by you may be exposed to multiple computers and/or users in transit, and
(3) interception during transit by improper access may occur.

# EXHIBIT H

# JAMES W. TIPPIN & ASSOCIATES
## ATTORNEYS AT LAW

JAMES W. TIPPIN
DANA TIPPIN CUTLER
KEITH A. CUTLER*
CHARNISSA HOLLIDAY-SCOTT

21 WEST GREGORY BOULEVARD
KANSAS CITY, MISSOURI 64114-1105
816/471-8575
FAX 816/421-0243
EMAIL: mailbox@tippinlawfirm.com

*Admitted in Missouri and Kansas

March 22, 2019

VIA FAX ONLY 573-681-6074
Jacqueline D. Shipma, Esq.
820 Chestnut
Jefferson City, Missouri 65101

RE: Transit

Dear Ms. Shipma:

This letter is being written on behalf of Lincoln University Foundation. There are multiple issues regarding the termination of the Memorandum of Understanding (MOU.) dated September 10, 2015. However, due to the termination of the MOU, the following information and property should be submitted according to the following time lines below:

Property of the Foundation

1. Complete donors list of contributions to the Foundation from Jan.1, 2000 to December 31, 2019. Lincoln University should certify that it has not retained any information on copies of the above described donors list.                    March 31, 2019

2. All MOUs between donors and the Foundation from October 8, 1970 through December 31, 2018 Lincoln University should certify that the University has not retained any data or copies of the MOUs.                    March 31, 2019

3. All external correspondence to include but not limited to emails and letters to the University and Foundation from January 1, 2000 to March 31, 2019 and internal correspondence from January 1, 2000 to April 30, 2018.                    May 31, 2019

4. All internal correspondence, to include but not limited to, emails, letters, and MOUs from January 1, 2018 to March 15, 2019.                    April 1, 2019

JAMES W. TIPPIN & ASSOCIATES
ATTORNEYS AT LAW

Mrs. Shipma
March 22, 2019
Page 2

5.  All pre-printed checks and bank statements for each of the Foundations bank accounts.
    March 31, 2019

6.  All correspondence between the Lincoln University Foundation, the Board of Curators
    of Lincoln University, President of Lincoln University and all administrative staff of
    Lincoln University to include, but not limited to, letters and emails between the period
    of May 1, 2018 to March 20, 2019.                                   April 1, 2019

7.  All software associated with the Lincoln University Foundation, to include but not
    limited to Razors Edge, passwords, security and codes updates, and operational
    manuals.                                                          April 20, 2019

8.  All of the large vases and associated items that have been used to decorate the tables at
    the past presidential galas belong to the Foundation.              April 1, 2019

9.  All bio/personnel information regarding the Foundation Board Members from January
    1, 1990- March 1, 2019.                                            May 31, 2019

10. All financial records to include tax returns, independent audits of the Foundation from
    January 1, 1990 to December 31, 2018.                              May 31, 2019

11. All Computers with operation manuals, passwords, security codes, and updates. All
    furniture and furnishing of the Foundation.                        April 1, 2019

Financial Accountability of Foundation Funds

12. There have been checks totaling approximately Seven Hundred Thousand Dollars
    ($700,000) from the Foundations special bank accounts. These checks were made
    payable to Office of Advancement. An accounting for all disbursements from those
    transferred funds, to include but not limited to supporting documents.   March 31, 2019

13. There was a check for Ten Thousand Dollars ($10,000) from Foundation for the
    coronation of Dr. Woolfolk. Provide an accounting to include but not limited to all
    supporting documents for the use of the Ten Thousand Dollars.      March 31, 2019

Cease and Desist

14. The Lincoln University Gala for 2019 has the Lincoln University Foundation as a
    sponsor. The Lincoln University Foundation is not participating in this fund raiser. By
    no later than March 31, 2019, provide a disclaimer satisfactory to the President of the
    Foundation to reflect that the Lincoln University Foundation is not a participant in the

Electronically Filed - Cole Circuit - October 15, 2019 - 03:22 PM

JAMES W. TIPPIN & ASSOCIATES
ATTORNEYS AT LAW

Gala raised and the Lincoln University Foundation will not receive any of the funds raised.
April 1, 2019

**Financial Request**

15. Provide the total expenditure, to include supporting documents for president of the university and staff to attend the Memorial for Dr. James Franks in Atlanta Georgia on March 2, 2019 to include but not limited to, persons attending, and source of funding.
April 1, 2019

16. The total amount of donations received by the University for the funeral of D'Angelo Bratton-Bland from alums, including that from Obrie and Cora Smith, and the disbursement of the money received with supporting documents.    April 1,2019

17. All correspondence between D'Angelo Bratton – Bland family the Curators and the Office of the President, and administrators, to include emails, letters, and press releases by the University.
April 1, 2019

18. A sunshine request was made on about December 18, 2018 (copy enclosed as a courtesy). Lincoln University has yet to respond to the request. Again, this request is being made.
April 1, 2019

19. The following documents and business records of Lincoln University, to include but not limited to, the curators, office of president and administrative staff one request pursuant to Revised Stature of Missouri § 610.011, et seq. (The Sunshine Law): The records described in paragraphs. 1, 4, 6, 10, 12, 13, 15, 16, 17, and 18.

If there are any questions or if the time lines established are of concern, please contact the undersigned to amicably resolve any issues.

With warmest regards,

James W. Tippin
"Class of 64"
Counsel of the Lincoln University Foundation

JWT:rm

cc: Hardy Dorsey

Electronically Filed - Cole Circuit - October 15, 2019 - 03:22 PM

# EXHIBIT I

Electronically Filed - Cole Circuit - October 15, 2019 - 03:22 PM

 **LINCOLN UNIVERSITY**

Office of Legal Counsel

820 Chestnut Street
Jefferson City, MO 65101

Phone: (573) 681-5061
Fax:    (573) 681-6074

April 2, 2019

James W. Tippin & Associates
Attorneys at Law
21 West Gregory Boulevard
Kansas City, Missouri 64114-8875

Re: Lincoln University

Dear Mr. Tippin:

I am writing in response to your letter to me dated March 22, 2019 which you indicate is being written on behalf of what used to be the Lincoln University Foundation and your phone conversation last with our outside counsel.

Your letter appears to be a combination of requests for personal property and documents that you indicate that you believe are owned by your client and a Sunshine Law request pursuant to Missouri law. It is somewhat difficult to sort through which category certain of your requests fall into but we will do our best to do so.

As to those items in your letter that seem to best be characterized as Sunshine Law requests, a very substantial number of documents are at issue and will take a significant amount of time to retrieve. Accordingly, it will not be possible for the University to provide you with the records requested within three business days of receipt of your letter. However, the University will work expeditiously to respond to your request and provide records as soon as reasonably possible under the circumstances.

If any of the documents you request are more important to you than others, please let us know and we will try to concentrate on collecting those first.

The following is a partial response to some of your requests corresponding to the same numbers in your letter:

1. & 2. For a variety of legal and other reasons, the University will not be able to certify that it has not retained information on the donor records as most of the records also involve the University.
3. 4. & 6. As written your request to these items would not be limited to matters involving the Foundation but we understand that such is your intent.
5. A Sunshine Law request does not require turning over originals of items so we assume this is not a Sunshine Law request.
7. 8. 10. & 11. As to these items of personal property that we determine are still owned by the Foundation, we will, of course, make them available for you to pick them up.

7303155.2

*Founded 1866: 62nd & 65th Colored Infantries*
*An equal opportunity institution*

14. The University is not advertising that your client is involved with the Gaia. If you find evidence to the contrary, please let us know and we'll investigate.

18. This item refers to your letter to Mr. Dorsey of December 18 requesting Board of Curators resolutions as to Dr. Woolfolk's authority to negotiate a new MOU. It was our thought that the December 14 letter from the Board of Curators President terminating the MOU would have answered the question. In addition, any resolutions and other board action authorizing negotiation of the MOU are closed records under Section 61.021(10 of the Sunshine Law.

Please contact the undersigned if you would like to discuss this matter further.

Very truly yours,

Jacqueline D. Shipma
General Counsel
Lincoln University of Missouri

- 2 -

Electronically Filed - Cole Circuit - October 15, 2019 - 03:22 PM

# EXHIBIT J

# JAMES W. TIPPIN & ASSOCIATES
## ATTORNEYS AT LAW

JAMES W. TIPPIN
DANA TIPPIN CUTLER
KEITH A. CUTLER*
CHARNISSA HOLLIDAY-SCOTT

21 WEST GREGORY BOULEVARD
KANSAS CITY, MISSOURI 64114-1105
816/471-8575
FAX 816/421-0243
EMAIL: mailbox@tippinlawfirm.com

*Admitted in Missouri and Kansas

March 8, 2019

**VIA EMAIL: simmonsjoe1@embarqmail.com**
**AND CERTIFIED MAIL NO.: 7018 0680 0002 3267 5173**

Dr. Joseph Simmons
242 Virginia Trail
Jefferson City, Missouri 65101

Re: Lincoln University Foundation

Dear Dr. Simmons:

I have been requested to write this letter on behalf of the Lincoln University Foundation Board of Directors. Your recent signing of checks from the Foundation special purpose accounts that total approximately Seven Hundred Thousand Dollars ($700,000) made payable to the University Office of Advancement causes a number of critical concerns. Answers to the following questions will assist the Board in resolving the concerns:

(1) Who requested the checks??

(2) When did you sign the checks??

(3) Historically, the special purpose account checks were made payable to the intended organization. Why were the checks you signed made payable to the University Office of Advancement??

(4) Historically, not a single check was more than Ten Thousand Dollars ($10,000). Did it not raise a concern to sign such large checks to the University Office of Advancement?

(5) Did you make inquiry as to why the funds were being transferred from the special purpose accounts to the University Office of Advancement? If so, who did you speak to and when did you speak to him/her?

(6)  Was there any consideration given to contacting the President of the Foundation before signing such large checks to the University Office of Advancement?

(7)  The Board has had numerous phone meetings since you signed the checks. Why did you not advise the Foundation President and Board members that the funds had been transferred from the special purpose accounts to the University Office of Advancement?

The transfer of the special account funds to the University Office of Advancement during this heightened tension period, without a MOU, creates an issue of accountability. Your assistance by fully answering the above questions is vital to the Board. Your response is needed no later than March 15, 2019. Thanks.

Very truly yours,

James W. Tippin

JWT/tmm

cc: Hardy Dorsey, President, Lincoln University Foundation Board

Electronically Filed - Cole Circuit - October 15, 2019 - 03:22 PM

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

## OFFICIAL USE

Certified Mail Fee
$ 3.50

Extra Services & Fees (check box, add fee as appropriate)
☒ Return Receipt (hardcopy)      $ 2.80
☐ Return Receipt (electronic)    $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required       $
☐ Adult Signature Restricted Delivery $

Postmark
Here

Postage
$ .50

Total Postage and Fees
$ 6.80

Sent To   Dr. Joseph Simmons
Street and Apt. No., or PO Box No.
242 Virginia Trail
City, State, ZIP+4
Jefferson City, MO 65101

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

7018 0680 0002 3267 5173

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Dr. Joseph Simmons
242 Virginia Trail
Jefferson City, MO 65101

9590 9402 3898 8060 0340 61

2. Article Number (Transfer from service label)
7018 0680 0002 3267 5173

PS Form 3811, July 2015 PSN 7530-02-000-9053

A. Signature
X Mary W. Simmons    ☐ Agent  ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
3-11-29

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☒ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

Electronically Filed - Cole Circuit - October 15, 2019 - 03:22 PM

# EXHIBIT K

March 22, 2019

**VIA EMAIL:** simmonsjoe1@embarqmail.com
**AND CERTIFIED MAIL NO: 7018 0680 0002 3267 5258**

Dr. Joseph Simmons
242 Virginia Trail
Jefferson City, Missouri 65101

RE: Lincoln University Foundation

Dear Dr. Simmons:

I have been requested to write this letter on behalf of the Lincoln University Foundation
Board of Directors. You have been removed from the Foundation Board of Directors.

Very truly yours,

James W. Tippin

JWT:rm
cc: Hardy Dorsey





# EXHIBIT L

Electronically Filed - Cole Circuit - October 15, 2019 - 03:22 PM

# Lincoln University rehires administrator on part-time basis

April 13th, 2019     by Bob Watson     in Local News     Read Time: < 1 min.

Joe Simmons, a retired Lincoln University teacher and administrator, has returned to the school on a part-time basis through the end of June.

LU spokeswoman Misty Young told the News Tribune on Friday: "Dr. Joe Simmons was hired by Lincoln University as a casual, part-time employee on March 15, 2019, and is working on special projects as assigned by the president."

He'll be paid $14,000.

"His extensive knowledge of Lincoln and its history is invaluable to the university and to the new administration," Young said, noting Simmons has "volunteered with the university in various capacities since his retirement."

Simmons came to LU in 1968 to teach biology in what then was LU's Laboratory School, run by the university's teacher education program in Eliff Hall until the 1980s.

Although he had expected to stay only a year or two, Simmons continued to teach at LU and eventually stayed for 38 years, holding a number of teaching and administrative positions before retiring July 31, 2006.

He earned his doctorate from the University of Missouri while working at LU.

**SPONSORED CONTENT on News Tribune**



### If You're Over 30 And Own A Computer, This Game Is A Must-Have! 🗗

BY VIKINGS: FREE ONLINE GAME

Build Your City and Conquer New Territories!

Case 2:20-cv-04014-MDH   Document 1-5   Filed 01/31/20   Page 55 of 63

www.newstribune.com/news/local/story/2019/apr/13/lincoln-university-rehires-administrator-on-part-time-basis/774138/                    1/1

# EXHIBIT M

**LINCOLN UNIVERSITY OF MISSOURI
ALUMNI ASSOCIATION, INC.**

**GREATER KANSAS CITY CHAPTER**

P.O. Box 300535
KANSAS CITY, MO 64130-0535

May 13, 2019

President Jerald Jones Woolfolk

201 Young Hall

Jefferson City, Missouri 65l02

RE: Greater Kansas City Lincoln University Alumni Association


Dr. Woolfork the purpose of this letter is to request all funds of the Greater Lincoln University Alumni Association, endowed, unrestricted, special or any other category to remain or be returned to the 62nd and 65th Regiments Legacy Foundation Inc.

There are several reasons that this chapter is demanding our donations remain with the Foundation:

____There has never been any "odor" of mistrust regarding the Foundation until this administration.

____There is a real concern of good judgement by your office creating this controversy with the Foundation.

____This controversy with the Foundation does not address the issues of student retention or student graduation rates. These are the primary factors for state funding.

Again, the Greater Kansas City Lincoln University Alumni Association, as donors, demands that it's funds remain with or returned to the Foundation.

Respecfully yours,

Robert N. Coleman, President Greater Kansas City Alumni Association

cc: Attorney James Tippin

1

# EXHIBIT N

Electronically Filed - Cole Circuit - October 15, 2019 - 03:22 PM

Electronically Filed - Cole Circuit - October 15, 2019 - 03:22 PM



# Lincoln University
## Of Missouri

*PO Box 311335*

*Atlanta Alumni Chapter, Inc.*

*Atlanta, GA 31131*

May 18, 2019
Dr. Jerald J. Woolfolk, President
Lincoln University, Missouri
820 Chestnut Street
Jefferson City, Missouri 65101

Dear Dr. Woolfolk:

    I am writing to you with significant concerns regarding our efforts to support the university and related programs. Unfortunately, we have learned that the University and the Lincoln University Foundation no-longer have a memorandum of understanding concerning administrative oversight of foundation affairs. We further understand that the Lincoln University Foundation has changed its name to be entitled "62nd and 65th Regiments Legacy Foundation." Currently, the Lincoln University (MO) Atlanta Alumni Chapter, Inc. has four accounts that are held in trust within the former Lincoln University Foundation now known as the "62nd and 65th Regiments Legacy Foundation." Our account balances are cited below, and each has a memorandum of understanding for each account accordingly.

| Lincoln University Foundation – Atlanta Chapter Accounts 2018 Summary Report | | | | |
|---|---|---|---|---|
| **Lincoln University (MO) Atlanta Alumni Chapter, Inc. Account Number and Title** | **Balance As of 09/30/2018** | **Transfer/Deposit Capital Gain and Net Surplus (Deficit)** | **Amount Transferred Deposited** | **Projected Balance** |
| 005 ATL Chapter Endowment | $31,850.77 | $1,081.19 | 0.00 | $31,850.77 |
| 031 ATL Chapter Special Purpose Fund | $9,857.72 | 0.00 | 0.00 | $9,857.72 |
| 061 ATL Chapter Meriwether County Scholarship | $4,650.29 | 0.00 | $940.00 | $5,590.29 |
| 322 ALT Golf Tournament Special Purpose Fund | $5,517.93 | -(7,318.71) | $11,060.00 | $16,577.93 |
| **Accounts Grand Total** | **$51,876.71** | **n/a** | **$12,000.00** | **$63,876.71** |
| Special Note: These are the figures as of 09/30/2018. We have not received the year-end reports which should show our 2018 Homecoming Gift of $12,000.00 [$940.00 Account 061 & $11,060.00 Account 322]. Therefore, we have projected our balances accordingly. Also note, $700.00 should be deducted from Account 031 for our contribution to the National Alumni Association Book Scholarship drive that took place in 2017-this deduction has not yet occurred although we have authorized it to occur. An updated report will be presented at the end of the 1st quarter of 2019. **Special Note: We have documentation to support these figures.** | | | | |

    Furthermore, please be informed the Lincoln University (MO) Atlanta Alumni Chapter, Inc. has a significant and longstanding history for supporting the university with our time, treasures, and service. We are committed to the sustainability of our Alma Mater. We further value our efforts to sustain and support the historical legacy of the Lincoln University Foundation, now known as the "62nd and 65th Regiments Legacy Foundation." The work set forward by the foundation has given us and provides us the opportunity to engage in specific outcomes where we would like and how our contributions are to be applied at the university level.

    ***Therefore, please be informed, the Lincoln University (MO) Atlanta Alumni Chapter, Inc will continue to place in trust all our account holdings with the 62nd and 65th Regiments Legacy Foundation, and there they are to remain and not be removed unless they are authorized by the chapter.*** All our contribution checks have been made payable to the Lincoln University Foundation. We have no direct deposits made to the university unless they are authorized transfers of funds from the Foundation to the University or other account holders in the foundation by the chapter. As such, if any funds have been removed from any of our foundation accounts to the university without our authorization, they are to be returned immediately without question. As shown above, we have approximately $31,850.77 in our Chapter Endowment account 005; and a total of $32,025.94 in our special purpose/scholarship accounts 031,061 & 322.

Electronically Filed - Cole Circuit - October 15, 2019 - 03:22 PM



Additionally, we ask that you and the Board of Curators find a way to recapture a positive relationship with the foundation and settle your differences constructively. It is unfortunate to see the university and the foundation only method of resolving disputes is through the form of civil adjudication. As a university, we do not benefit from this type of polarization. We will suffer as an institution of higher learning, no matter how the disagreements are resolved when it's left up to the courts. What we need is a resolution that does not demean the character of the institution or the foundation. Someone must take a higher road for the sake of the institution, and we believe that someone should be you and the Board of Curators. The university suffers from this type of public discourse, and it interferes with the generous spirit of those who are willing to support our cause for fundraising to support the university.

Your leadership is required in this space, and where we can assist you, we stand prepared to do so. However, you should know that we are firm in our commitment to the support the continued existence of the Lincoln University Foundation, now known as the "62nd and 65th Regiments Legacy Foundation." Our commitment is driven by the need to have separate and independent oversight of the contributions deposited in the foundation's corporate structure. We see the university for what it is – a tax-exempt state agency -where the ultimate authority over all funds received and administered by the university is governed by the state of Missouri. Moreover, where the Lincoln University Foundation is now known as the "62nd and 65th Regiments Legacy Foundation" and it is an independent 501(c)3 non-profit corporation in the state of Missouri, they are governed by the Foundation Board of Directors, and they answer to the account holders, and the Internal Revenue Service for best practices.

To remove this relationship from existence does not reflect best practices. From the perspective of our chapter supporters who have personal or endowed accounts within the foundation such as we do, they also have become dismayed. The reasoning behind this disturbance, we have corporate partners who match our contributions when they are deposited into an independent 501(c)3 non-profit corporation and to generate such a public narrative as the one that exists today only produces discouragement for our donors.

We believe you have a vision for the university. However, it has not been presented to us as a chapter, and we have no communication where to find it in print. Such as this may be, we are extending to you an invitation to come and speak to us at our next chapter meeting on Saturday, July 20, 2019, at Christian Fellowship Baptist Church 1500 Norman Drive Atlanta, Georgia 30349 at 1:00 pm. Here you can share your vision, explain your articulation for best practices, gather feedback from chapter supporters, and begin the healing process for this distressing narrative.

Finally, we have set in place our 9th Annual Lincoln University Atlanta Alumni Chapter Fundraising weekend event, which will occur during the month of June 6th through 9th. You are also invited and welcome to attend this event if your schedule permits.

Sincerely,
*Dr. Sherman Bonds*
Dr. Sherman Bonds,
Chapter President, Lincoln University (MO) Atlanta Alumni Chapter, Inc.
Pc:       Atlanta Alumni Chapter Executive Board;
          LU Board of Curators;
          Board of Directors 62nd and 65th Regiments Legacy Foundation, Inc.; and
          Board of Directors Lincoln University Alumni Association

# EXHIBIT O

| | |
|---|---|
| **From:** | Jean Johnson <luaapresident18@gmail.com> |
| **Sent:** | Wednesday, June 05, 2019 11:19 AM |
| **To:** | president@lincolnu.edu |
| **Cc:** | LUMOAA Chapter Presidents; lumoaa-executive-team@googlegroups.com; James Tippin |
| **Subject:** | LUAA, Inc. Foundation Funds |
| **Attachments:** | Letter to President Jerald Woolfolk.pdf |

Good Morning President Woolfolk,

Please see the attached letter from The Lincoln University Alumni Association, Inc. and copied to Attorney Jim Tippin and 62nd & 65th Regiments Legacy Foundation President Hardy Dorsey.

Your response would be much appreciated.

Thank you,

Jeanneth Johnson '98
National President
Lincoln University of Missouri Alumni Association, Inc.
216-291-9584 (cell)
440-804-5070 (fax)
www.lumoaa.org
FaceBook: Lincoln University of Missouri Alumni Association
Twitter: LincolnMissouri
Snapchat: LUMOAA1866



Electronically Filed - Cole Circuit - October 15, 2019 - 03:22 PM



ALWAYS TRUE · ALWAYS BLUE

LINCOLN UNIVERSITY · MISSOURI
ALUMNI ASSOCIATION

**Board of Directors**

*Executive Board*
**Jeanneth Johnson '98**
National President

**Dr. Jerome Offord, Jr.
'93**
National Vice President

**Jeffery McCarther '96**
National Treasurer

**Cynthia Harden Bowie
'83**
National Secretary

*Chapter Presidents*
**Atlanta, GA**
Dr. Sherman Bonds '80
**Chicago, IL**
Lionel Harris '69
**Cleveland, OH**
Roscoe Rush '60
**Dallas, TX**
Joy Hayden '94
**Dayton/Cincinnati/
Columbus, OH**
Ryan Jackson
**Denver, CO**
William Gray '73
**Detroit, MI**
Alicia Matthews
Johnson 93'
**South Florida**
Dr. Zandra Rucker '67
**Houston, TX**
LaTayne Bruce
**Indianapolis, IN**
Darren Bost '89
**Jefferson City, MO**
Ruby Stewart '66
**Kansas City, MO**
Robert Coleman '65
**Los Angeles, CA**
William (Bill) Hardy '60
**Memphis, TN**
Emma Adams '64
**Milwaukee, WI**
Dianne Pratt '71
**New York, NY**
Linda Helm '59
**San Francisco, CA**
Dr. Herbert Kitchen '88
**Southeast, MO**
Leother Branch '88
**Greater St. Louis, MO**
Nell Cheatham
**Washington D.C.**
Shelvy Convert '88

June 5, 2019

Dr. Jerald Woolfolk
President's Office
820 Chestnut Street
Jefferson City, MO 65101

RE: LUAA, Inc. Funds

Dr. Woolfolk,

The purpose of this letter is to request that all funds of the Lincoln University Alumni Association, Inc. (endowed, unrestricted, special or any other category) are to remain or to be immediately returned to the 62nd & 65th Regiments Legacy Foundation, Inc. Below are the following reasons:

    1. There is an expressed concern of good judgement by many of the chapter presidents and its members across the nation by your office pertaining to the controversy with the Foundation.

    2. The controversy with the Foundation does not address the issues of student graduation rates as this is one of the primary factors for state funding.

    3. The attack on the Foundation does not reflect good judgement as to the priorities facing the university.

4.     The money was moved from the Foundation to the University and does not reflect high ethical standards.

The LUAA, Inc. as donors, vehemently requests that its funds remain with the 62nd & 65th Regiments Legacy Foundation, Inc.

Jeanneth Johnson '98
National President
Lincoln University Alumni Association, Inc.